**James J. DVORAK, Plaintiff-Appellant,**

v.

**HOLIDAY INNS OF AMERICA, INC.,
et al., Defendants-Appellees.**

**No. 26864.**

United States Court of Appeals,
Fifth Circuit.

April 16, 1970.

Rehearing Denied June 10, 1970.

J. B. Hodges, Lake City, Fla., for appellant.

Luke G. Galant, Lloyd C. Leemis, Jacksonville, Fla., for appellees.

Before TUTTLE and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge:

In this diversity case plaintiff James J. Dvorak of Fox River Grove, Illinois, appeals from a judgment entered pursuant to a directed verdict granted by the district court in favor of defendants Holiday Inns of America, Inc., a Tennessee corporation, and Inn of Lake City, Inc., a Florida corporation, on the issue of contributory negligence of the plaintiff in his suit for damages for serious personal injuries sustained when he fell on a stairway while stopping at the Holiday Inn near Lake City, Florida on the night of January 20, 1966.

Dvorak, 69 years old at the time of his injuries and employed by a Chicago, Illinois, firm as a consulting mechanical engineer for steel plant and cement plant work, was en route with his wife from Chicago to his winter home in the Fort Lauderdale, Florida, area. They arrived at the Holiday Inn at about 6:00 P.M. on the 20th during a rain and, upon checking in, were assigned a room on the second floor on the west side of the east wing of the motel. This wing had six outside, uncovered stairways—one on each side of the wing at the north end, one on each side at the south end and one on each side in the middle. After parking his automobile to the east of the wing as he was directed, the plaintiff, carrying a club bag weighing about 10 pounds, ascended one of these stairways to reach his room.

It was still raining when Dvorak descended another of the stairways at the south end of the wing to the dining room for dinner and afterwards when, by way of the same stairs, he took some food back to the room for his wife. It rained all night and was still raining very hard when he and his wife prepared to depart at about 8:30 A.M. the following morning. On another of the stairways with his right hand on the handrail—and his club bag in his left hand—plaintiff followed his wife by two or three steps down the stairs. She negotiated them without incident, but he fell on the third step from ground level. His wife did not witness his fall and he did not know what caused him to fall.

Treatment for his injuries kept him in Florida until June. On his way back to Chicago he stopped at the inn and attempted to reconstruct the accident by examining the steps, taking photographs, making measurements and preparing drawings of them. From his examination and calculations plaintiff developed a theory of negligence that the stairway was improperly maintained and had de-

fects in construction causing it to be dangerous in the following particulars:

1. The stairway was not covered, but exposed to the elements, thus failing to conform to the rules and regulations of the Florida Hotel and Restaurant Commission;

2. There was no set of covered steps from each building or series of units which would allow guests to avoid stairways exposed to the elements;

3. There was no non-skid material on the treads and metal nosing contrary to the rules and regulations of the Florida Hotel and Restaurant Commission;

4. The stairway was so constructed that water would be retained on the treads, making it unduly slippery and dangerous when rained upon;

5. The metal nosing at the outer edge of the treads projected above the surface of the treads, creating a hazard—particularly when wet—by reason of the difference in traction between the surface of the tread and the metal nosing, as well as the difference in elevation between the surface of the tread and the metal nosing at the forward edge of the tread;

6. The last step was higher than the others;

7. The measurements of the treads and risers were not in conformance with the Florida State Hotel and Restaurant Commission's rules and regulations, the Southern Safety Building Code or general architectural practices and were dangerous and unsafe.

Plaintiff brought suit against defendants on this theory of negligence, alleging that the defendants were negligent in all these particulars. The defendants denied the alleged negligence and alleged that plaintiff was guilty of negligence which caused or contributed to causing the fall in that, under the conditions then existing, he failed to exercise due care and caution for his own safety in descending the stairway.

At the conclusion of the presentation of plaintiff's case, the district court granted the defendants' motion for a directed verdict on the ground that the plaintiff was contributorily negligent as a matter of law. The plaintiff has appealed urging that the trial judge erred (1) in holding that the plaintiff was contributorily negligent as a matter of law, and (2) in excluding from evidence the Rules and Regulations of the Florida State Hotel and Restaurant Commission and the testimony of certain witnesses relative to those rules and regulations. Under our decision to affirm on the ground that the plaintiff was contributorily negligent as a matter of law, it is not necessary to examine the merits of the other errors alleged.

The plaintiff contends on the issue of contributory negligence that he was not negligent, and that the directed verdict in this case is contrary to the current trend in Florida not to take a question of negligence from the jury.

■ We agree that in negligence cases particularly it is ordinarily the function of the jury to weigh and evaluate the evidence, but under the Florida test for resolving motions for directed verdict the district judge properly withdrew this case from the jury and decided the question of contributory negligence as a matter of law. The Supreme Court of Florida in Stirling v. Sapp, 229 So. 2d 850 (Fla.1969), admonished that motions for directed verdict "should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence", and should be granted "only if there is no evidence or *reasonable inferences* to support the opposing position." *Id.*, at 852. The court observed that in negligence cases "A jury should determine what is or what is not negligence in a particular case where there are disputes or conflicts in the testimony, * * * or where the facts are such that reasonable persons may fairly arrive at different conclusions." On the other hand, "Where the facts are undisputed and the evidence is reasonably susceptible of but a single inference, the question of defendant's negligence or

plaintiff's contributory negligence becomes one of law for the court." [1] *Id.*, at 853. We find this latter situation to be the case here.

■ In Florida an adult is charged by law with the duty at all times to exercise reasonable care for his own safety,[2] and momentary forgetfulness of a known hazard or failure to pay any attention to what he is doing does not relieve him of his duty under the circumstances.[3]

■ The respective duties of the owner, occupant or person in charge of premises and invitees or business visitors thereon are set out succinctly in Miami Coin-O-Wash, Inc. v. McGough, 195 So. 2d 227, 228 (Fla.App.1967):

"The owner, occupant or person in charge of the premises owes to the invitee of [sic] business visitors thereon, the duty of exercising reasonable care to keep the premises in a reasonably safe and suitable condition. * * * He is not required to keep the premises *absolutely safe,* * * *

or in such condition that no accident could possibly happen to a customer. * * * There is no duty to warn an invitee against patent or obvious conditions which are not dangerous per se. * * * An invitee is under a duty to exercise reasonable care for his own safety and to observe that which is obvious and may be seen by one exercising such care. * * *"

Additionally the proprietor of the premises has an obligation to warn of latent dangers, i. e., those which are not apparent from a casual observation of the premises.[4]

■■ When the danger is patent and obvious and the invitee does not exercise reasonable care to avoid injury, the question of contributory negligence is properly decided by the court as a matter of law.[5] If an invitee knows of the danger or hazard it is regarded as patent and obvious,[6] and an invitee who knows of a danger on premises, and does not act reasonably to avoid injury to himself,

---

1. Other recent Florida cases recognizing these rules governing directed verdicts are: Macrellis v. George, 202 So.2d 107 (Fla.App.1967); Ameisen v. Royal Continental Hotels Corp., 226 So.2d 463 (Fla.App.1969); McRae v. Winn Dixie Stores, 227 So.2d 214 (Fla.App.1969).

   Under the federal test laid down in Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969), the district court also correctly granted the motion for directed verdict because, after considering all of the evidence in the light and with all reasonable inferences most favorable to the plaintiff, the facts and inferences point so strongly and overwhelmingly in favor of defendants that reasonable men could not arrive at a verdict contrary to them. There was no substantial evidence opposed to the motion, that is, evidence of such quality 'and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.

2. Earley v. Morrison Cafeteria Co. of Orlando, 61 So.2d 477 (Fla.1952); City of Palatka v. Woods, 78 So.2d 562 (Fla. 1955); Becksted v. Riverside Bank of Miami, 85 So.2d 130 (Fla.1956); Chambers v. Southern Wholesale, 92 So.2d 188

(Fla.1956); Dewar v. City of Miami, 93 So.2d 58 (Fla.1957); Jahn v. Tierra Verde City, Inc., 166 So.2d 768 (Fla.App. 1964); Grall v. Risden, 167 So.2d 610 (Fla.App.1964); McKean v. Kloeppel Hotels, Inc., 171 So.2d 552 (Fla.App. 1965).

3. Garring v. King Cole Northshore Hotel, 122 So.2d 207 (Fla.App.1960); McKean v. Kloeppel Hotels, Inc., supra.

4. Kagan v. Eisenstadt, 98 So.2d 370 (Fla. App.1957).

5. Earley v. Morrison Cafeteria Co. of Orlando, 61 So.2d 477 (Fla.1952)—finding by the court of contributory negligence on motion for summary judgment when plaintiff tripped over door mat; Kagan v. Eisenstadt, supra note 4—ruling for the defendant on motion for summary judgment where plaintiff fell through open stairwell of building under construction.

6. Atlantic Terrace Co. v. Rosen, 56 So.2d 444 (Fla.1952)—water on stairs that tenant knew collected during rain; Gonet v. Evans, 66 So.2d 53 (Fla.1953)—rubber mat that tenant knew was not fastened to landing.

is contributorily negligent as a matter of law.[7]

Generally speaking the invitee is under a duty to see and be aware of what is open and obvious, that is, to perceive that which would be obvious to him upon the ordinary use of his senses.[8] This has been expressed, " * * * if it [the danger] is there to be seen, it is deemed in law, to have been seen." [9] However, when the invitee does not know of the danger, the fact that the danger is visible does not necessarily in all cases determine the issue of the invitee's contributory negligence. If the facts of a particular case create a reasonable doubt as to whether the invitee used due care for his own safety under all of the circumstances, he is not guilty of contributory negligence as a matter of law, even though the danger was visible.[10] The issue of contributory negligence is for the jury therefore, and not for the court, where reasonable doubt exists under all of the circumstances—of which visibility of the danger is an important one—as to whether the invitee used due care for his own safety.[11] Reasonable doubt as to whether an invitee should have been aware of a visible danger, i.e., whether the danger was patent and obvious, may be created by characteristics of the danger itself or by the circumstances of the invitee's relationship to it.[12]

Although the rules are clearly enough stated, the individual opinions on the facts of the particular cases in many instances are cursory and cryptic and give little guidance for specific determinations in future slip and fall cases as to when a reasonable doubt is created on the issue of contributory negligence. The short analyses in many opinions make them difficult to reconcile with

7. Allied Business Association, Inc. v. Saling, 227 So.2d 712 (Fla.App.1969)— customer at auction backed off edge of platform; McKean v. Kloeppel Hotels, Inc., supra note 2—guest failed to avoid liquid substance known to be spilled on dance floor.

8. Miller v. Shull, 48 So.2d 521 (Fla.1950) —slippery substance in hotel bathtub; Earley v. Morrison Cafeteria Co. of Orlando, supra note 5; Pettigrew v. Nite-Cap, Inc., 63 So.2d 492 (Fla.1953)— plate glass door of restaurant; Kagan v. Eisenstadt, supra notes 4 and 5.

9. Kagan v. Eisenstadt, supra note 4, 98 So. 2d at 371.

10. City of Jacksonville v. Stokes, 74 So.2d 278 (Fla.1954)—12 year old child did not know of a hole in the sidewalk. The Supreme Court of Florida observed, "if visibility alone settled contributory negligence every case of slipping on a floor or of encountering any stationary object would automatically be a case on non-liability for in all these cases the condition which caused the harm was visible."

11. Id., Food Fair Stores, North Dade, Inc. v. Winkelmann, 135 So.2d 6 (Fla.App. 1961)—invitee tripped over an electric cord running between hobby horse and store wall when he attempted to activate the device; Miami Coin-O-Wash v. Mc-Gough, supra—customer tripped over crevice or door sill when leaving premises; Embry Riddle Co. v. Carrodus, 207 So.2d 472 (Fla.App.1968).

12. Food Fair Stores of Florida, Inc. v. Moroni, 113 So.2d 275 (Fla.App.1959) —food store customer failed to observe a slippery substance on the floor at a place where she was invited to give her attention to the store's wares; Goldstein v. Great Atlantic & Pacific Tea Company, 142 So.2d 115 (Fla.App.1962)—protruding rod in a damaged car stop could have been camouflaged by its dark color against a dark pavement; Miceli v. Lifter, 161 So.2d 253 (Fla.App.1964)—a 2 x 4 piece of lumber used as a divider between two shuffleboard courts and painted black like the other court markings could be regarded by a jury as a trap; McHargue v. Great Atlantic & Pacific Tea Company, 209 So.2d 283 (Fla.App.1968)—a cardboard divider extending into the aisle close to the floor of a supermarket; Winsemann v. Travelodge Corporation, 205 So.2d 315 (Fla.App.1968)—inadequate lighting could have disguised the true shape, size and elevation of the curbing in a motel parking lot; McRae v. Winn Dixie Stores, 227 So.2d 214 (Fla. App.1969)—edges of a portion of cart ramp bread delivery man stepped out of his truck onto were vertical rather than sloped.

each other on the issue of when contributory negligence is a matter of law.[13] Very little can be gained therefore from a comparison of the various decisions because of the numerous evidentiary facts contributing to each decision. We can only apply the general principles of the law of Florida and determine on the basis of the particular facts and circumstances of this case whether reasonable doubt exists on the issue of contributory negligence, that is on the question of whether the plaintiff used or failed to use due care for his own safety.

The outside, uncovered stairway on which plaintiff fell had two flights of steps with handrails constructed of metal and concrete. The first flight descended to a landing, and, in reverse direction, the second flight descended to ground level. All of the outside stairways in the motel were of like construction. The treads of the stairway were made of one and one-half inch deep concrete in metal pans 44 inches wide with a structural depth of 11¾ inches. Each step projected over the one below by one inch and the riser height between the steps was 7¼ inches. The plaintiff measured the step on which he fell with a 6-foot ruler and he estimated that the metal forward edge of the tread extended one-sixteenth of an inch above the concrete, but he admitted this was not a fine measurement.

The metal nosing on the tread was shiny and smooth when he examined it six months after the accident but he did not recall the condition of it on the day he fell. The treads had a brushed finish which means that the concrete was brushed with a broom during construction of the steps to roughen them and prevent slipperiness. The parts of the stairway close to the railings were worn somewhat smoother from use than the center portion.

The plaintiff testified that his shoes were dry when he came out of the motel on the morning of the accident. It was raining and the veranda or walkway from his room to the steps was wet on the outer edge, but he walked to the stairway on the dry part. It was daylight and he saw that the surface of the stairs was wet and that the treads contained some water. He followed his wife down the stairs with his right hand on the handrail and carrying a club bag weighing about ten pounds in his left hand.

The steps all looked alike to him and the step on which he fell looked no different to the others. He saw no foreign substance on the steps, nor cracks, chips or other such defects. He was watching the stairs closely as he descended, not just because they were wet, but because he wears trifocal glasses and, according to him, anyone who wears trifocal glasses has to be extraordinarily careful in going downstairs. He noticed no tendency to slip or slide on any of the steps before he got to the one on which he fell. He had successfully walked down the seven steps of the first flight to the landing, reversed direction and descended four more to the third step from the bottom when he fell. He could not explain how or why he fell other than, "When I stepped onto this step, I just went over. I—my foot slipped on the edge and I went over."

The wet condition of the stairway was obvious and the plaintiff was aware that the condition of the steps required him to traverse them with care for his own safety. There was nothing about the condition of the step on which he fell to cause the Court to have any doubt that had he used due care for his own safety he could have negotiated this step as he had the others, and as he had the similarly constructed stairways on

---

13. This situation in the Florida jurisprudence prompted the trial judge to remark in this case during the argument on the motion for directed verdict, "Well you can sure find slip and fall cases both ways. They are always cases of questioned liability. * * * they're hard cases for the Court to try * * *, but I'm convinced, there isn't any doubt in my mind whatsoever under the circumstances of this case that [the plaintiff] is guilty of contributory negligence as a matter of law. * * *" Record at p. 484.

the previous evening. Under the circumstances here the only reasonable inference is that he fell because he failed to use reasonable care to avoid slipping on the stairs.

Plaintiff seeks to avoid this overwhelming effect of the circumstances and to convince us that reasonable doubt existed on the issue of contributory negligence by arguing that the stairway was a "trap" for any guest of the motel, including the plaintiff, because it was not constructed in compliance with the Rules and Regulations of the Florida State Hotel and Restaurant Commission.[14] We cannot agree that the stairway, assuming that it varied in some particulars from the Rules and Regulations, was in any sense a "trap." The pictures of the stairway introduced by plaintiff refute this effectively and convince us, as they did the trial court, that this was an ordinary stairway offering no unusual characteristics which could cause it to be termed a "trap." Neither the structure of the stairway nor its condition was hidden or camouflaged in any way, but was open and readily assessable by the plaintiff in making his descent. The fact that the plaintiff could obtain the exact structural measurements of the stairway only after detailed examination does not make the structure or the condition of the stairs "hidden."

The plaintiff relies on Morrison Cafeterias, Inc. v. Lee, 215 So.2d 491 (Fla. App.1968) as supporting the view that cases such as this involving slipping on stairs should not be taken from the jury on the issue of contributory negligence. In that case three elderly sisters after their lunch at Morrison Cafeteria ascended the stairway to the second floor of the building to go to the ladies room. On their way back down stairs, one of the sisters fell down the stairs sustaining injuries that were ultimately fatal. The appellate court reversed a judgment based on a jury verdict in favor of the administratrix and ordered a new trial,

directing *inter alia* that the issue of contributory negligence be submitted to the jury in the new trial. The trial court had granted to the plaintiff a directed verdict on this issue based on the fact that the defendants had not shown contributory negligence. The appellate court disagreed with his ruling:

"The appellee's own testimony that her sister tripped and fell, or caught her heel, is indicative of the possibility of carelessness on her part, which we think raises a jury question. She did attribute the cause of tripping to the fault of the stairs. It was therefore error in removing this question from the jury." [215 So.2d 493]

If that case involving a directed verdict for the plaintiff suggests any matter pertinent to this one, it is that tripping on stairs is indicative of carelessness. It does not stand for the proposition that all cases of tripping on stairs presents a jury question. Each case, as we view the law of Florida, must be decided on *its own facts and circumstances as to whether it raises a reasonable doubt on the issue of contributory negligence.*

The granting of the motion for directed verdict was proper in this case, and the judgment of the district court is

Affirmed.

SIMPSON, Circuit Judge (dissenting):

I think the issues of negligence and contributory negligence present in this case required a jury verdict. I would accordingly hold that the motion for directed verdict was improvidently granted and reverse.

Several jury questions as to the appellees' negligence vel non were present. Leaving aside the question of the correctness of the exclusion from evidence of the Rules and Regulations of The Florida State Hotel and Restaurant Commission, which destroyed the accompanying claim of negligence arising from failure to comply with the rules and regulations in

14. The Rules and Regulations were excluded from the evidence in the case for rea-

sons not relevant to this discussion of contributory negligence.

the construction of the stairway, I think that the evidence allowed to go to the jury raised a serious jury question as to faulty design of the stairway, rendering it slippery when wet, and a related question of negligence in not providing an inside stairway for use in inclement weather.

A further jury question was involved in the condition of the step on which appellant slipped, the third step from the bottom of the stairway. Mr. Dvorak could only testify as to the condition of this step six months after the accident, but the jury had a right to determine whether that condition existed at the time of the accident and whether it was the (or a) proximate cause of Mr. Dvorak's slipping and falling. If at the time of the fall the concrete surface of the critical step was below the level of its metal rim so as to form a shallow catch-basin which contained water and presented a wet and slippery surface to the foot of an unwary person descending the stairway, the jury should have been permitted to pass on the questions of negligence in (a) the construction and (b) the maintenance of the step in such a dangerous condition.

As to the trial court's conclusion that contributory negligence was present as a matter of law, I am simply at a loss to understand the holding or the majority's approval of it. I would think that Mr. Dvorak's testimony as to his careful method of descending the stairway would clearly make such a holding impermissible and would require submission of the issue of contributory negligence along with those of negligence for the jury's determination.

What was said by the Supreme Court of Florida in Stirling v. Sapp, Fla.1969, 229 So.2d 850, 852, and the other Florida cases cited by the majority seems to me to preclude, not to support, the majority's holding. Here the evidence was not susceptible merely to a single inference, rather a jury was required to resolve conflicting inferences. I think Florida substantive law has been misconstrued by the majority, and also that they have

misapplied the directed verdict test adopted by us in Boeing v. Shipman, 5 Cir. 1969, 411 F.2d 365.

With deference, I dissent.